RECORD NUMBER: 14-1503

# United States Court of Appeals

### *for the*

# Fourth Circuit

**RICHARD W. MANN,**

*Appellant,*

– v. –

**EUROPEAN AMERICAN INVESTMENT BANK AG ,**

*Appellee.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA AT GREENSBORO**

# BRIEF OF APPELLEE

**TIMOTHY G. BARBER**
**ANTONIO E. LEWIS**
**KING & SPALDING, LLP**
**100 North Tryon Street, #3900**
**Charlotte, NC  28202**
**(704) 503-2578**

*Counsel for Appellee*

**CP** COUNSEL PRESS • VA – (800) 275-0668

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1503__        Caption: __Richard W. Mann v. European American Investment Bank AG__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__European American Investment Bank AG__
(name of party/amicus)

_____

who is _____Appellee-Defendant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                    ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                        ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: __s/ Timothy G. Barber__    Date: ___June 4, 2014___

Counsel for: __Appellee-Defendant__

## CERTIFICATE OF SERVICE
**************************

I certify that on _____June 4, 2014_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Ray A. Knight
rayaknight@aol.com

Attorney for Appellant

__s/ Timothy G. Barber__    ___June 4, 2014___
(signature)    (date)

- 2 -

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................1

JURISDICTIONAL STATEMENT ......................................................1

STATEMENT OF THE ISSUES..........................................................1

STATEMENT OF THE FACTS AND CASE ..........................................2

    I.    EURAM BANK – JURISDICTIONAL FACTS .......................2

    II.   RICHARD MANN – TAX SHELTER TRANSACTION.........5

    III.  THE IRS INVESTIGATES MANN ....................................8

    IV.  PROCEDURAL HISTORY ..............................................8

SUMMARY OF THE ARGUMENT ....................................................12

STANDARD OF REVIEW ...............................................................14

ARGUMENT ...............................................................................15

    I.    MANN'S ONLY CLAIMS ON APPEAL ARE FACTUAL IN
          NATURE, AND ARE REVIEWED FOR CLEAR ERROR..................17

    II.   MANN ATTEMPTS TO INTRODUCE NEW FACTS INTO
          THE APPELLATE RECORD, BUT THEY CANNOT SAVE
          HIS CONCLUSORY ALLEGATIONS.................................18

          A.   Mann's New Factual Allegations Should Be Disregarded...............19

          B.   The District Court Properly Rejected the IRS Memo,
               Whose Contents Are Inconsistent With Mann's Claims.................21

    III.  THE FACTS DO NOT SUPPORT THE EXISTENCE OF A
          PRINCIPAL-AGENT RELATIONSHIP BETWEEN  EURAM BANK
          AND PALI OR SECK SUFFICIENT FOR PERSONAL
          JURISDICTION. .......................................................26

i

A.   Actual Agency ....................................................................27

B.   Apparent Agency and Agency by Estoppel.....................28

C.   Agency by Ratification ....................................................30

IV.  THE FACTS DO NOT SUPPORT PIERCING THE
CORPORATE VEIL. ................................................................31

CONCLUSION.........................................................................................36

REQUEST FOR ORAL ARGUMENT ...................................................36

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*,
  480 U.S. 102 (1987)......................................................................19, 33

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................15

*Bauer v. Douglas Aquatics, Inc.*,
  698 S.E.2d 757 (N.C. Ct. App. 2010)...........................................26, 29

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................15, 34

*Cancun Adventure Tours, Inc. v. Underwater Designer Co.*,
  862 F.2d 1044 (4th Cir. 1988) .............................................................32

*Carefirst of Md. v. Carefirst Pregnancy Ctrs.*,
  334 F.3d 390 (4th Cir. 2003) ...............................................................14

*Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v.
  Nolan*,
  259 F.3d 209 (4th Cir. 2001) ...............................................................15

*Combs v. Bakker*,
  886 F.2d 673 (4th Cir. 1989) ...............................................................14

*Dist. 29, United Mine Workers of Am. v. United Mine Workers of Am.
  1992 Benefit Plan*,
  179 F.3d 141 (4th Cir. 1999) ...............................................................35

*Doe v. Chao*,
  306 F.3d 170 (4th Cir. 2002) ...............................................................21

*Dorton v. Dorton*,
  336 S.E.2d 415 (N.C. Ct. App. 1985)...................................................33

*Erickson v. Pardus*,
  551 U.S. 89 (2007)................................................................................18

*Glenn v. Wagner*,
    329 S.E.2d 326 (N.C. 1985)................................................................33

*Haley Paint Co. v. E.I. DuPont de Nemours and Co.*,
    775 F. Supp. 2d 790 (D. Md. 2011)..................................................15

*Hanson v. Denckla*,
    357 U.S. 235 (1958)..........................................................................27

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)..........................................................................16

*Hoffman v. United Telecomms., Inc.*,
    575 F. Supp. 1463 (D. Kan. 1983).............................................. 32-33

*J. McIntyre Machinery, Ltd. v. Nicastro*,
    131 S. Ct. 2780 (2011)......................................................................33

*Jesselson v. Outlet Assocs. of Williamsburg, L.P.*,
    784 F. Supp. 1223 (E.D. Va. 1991) .................................................21

*Mellon Investor Servs., LLC v. Longwood Country Garden Ctrs., Inc.*,
    263 Fed. App'x 277 (4th Cir. 2008) .................................................26

*Miller v. Piedmont Steam Co., Inc.*,
    528 S.E.2d 923 (N.C. Ct. App. 2000).............................................26

*Mylan Labs., Inc. v. Azko N.V.*,
    2 F.3d 56 (4th Cir. 1993) ...............................................14, 17, 33, 34

*Negron-Torres v. Verizon Commc'ns, Inc.*,
    478 F.3d 19 (1st Cir. 2007)..............................................................35

*Nichols v. G.D. Searle & Co.*,
    991 F. 2d 1195 (4th Cir. 1993) .........................................................15

*North Carolina v. Weaver*,
    607 S.E.2d 599 (N.C. 2005)..............................................................27

*Phelps-Dickson Builders v. Amerimann*,
    617 S.E.2d 664 (N.C. Ct. App. 2005)..............................................28

*Saudi v. Northrop Grumman Corp.*,
    427 F.3d 271 (4th Cir. 2005) .......................................................16, 32

*Shinn v. Greeness*,
    218 F.R.D. 478 (M.D.N.C.) .................................................................14

*United States v. Bestfoods*,
    524 U.S. 51 (1998)...............................................................................32

*United States v. George*,
    971 F.2d 1113 (4th Cir. 1992) ...........................................................31

*Vision Motor Cars, Inc. v. Valor Motor Co.*,
    981 F. Supp. 2d 464 (M.D.N.C. 2013) ..............................................15

**Statutes**

28 U.S.C. § 636(b)(1)...............................................................................21

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(2) .................................................14

## INTRODUCTION

This appeal presents a textbook case of an improper attempt to assert personal jurisdiction over a foreign company, contrary to a long line of precedent and our country's foundational principles of due process. Plaintiff-Appellant Richard W. Mann ("Mann") attempted to defraud the United States Government by committing tax evasion. He was caught and penalized. Now he is trying to use this case to recoup his self-inflicted damages. In doing so, he ignores the entities that conspired with him and instead targets an entity that he admits played no role in the alleged advice and counsel that led to his punishment. Unfortunately for Mann, the entity he chose to pursue—Defendant-Appellee European American Investment Bank AG ("Euram Bank")—lacks any contacts with his chosen forum. Accordingly, the Magistrate Judge recommended dismissal and the District Court Judge agreed.

## JURISDICTIONAL STATEMENT

Appellee Euram Bank hereby adopts by reference the Statement of Subject Matter and Appellate Jurisdiction in Appellant's Brief. Euram Bank does not adopt by reference any other portion of Appellant's Brief.

## STATEMENT OF THE ISSUES

Before the Court is a personal jurisdiction case in which Mann brought suit in North Carolina against an Austrian company with no contacts in that forum.

1

Euram Bank moved to dismiss Mann's suit for lack of personal jurisdiction. After the issue was fully briefed, the Magistrate Judge recommended, and the District Court ordered, that the action be dismissed in its entirety. The District Court found that Mann failed to make a prima facie showing of personal jurisdiction.

The sole question presented is whether the District Court properly dismissed Mann's suit for lack of personal jurisdiction over Euram Bank where (i) the alleged activities that are claimed to give rise to jurisdiction were purportedly performed by a subsidiary of Euram Bank, (ii) Euram Bank has presented evidence that it has no contacts in North Carolina, was not involved in these activities, and observed all corporate formalities, and (iii) Mann has offered only conclusory and unsupported allegations in his attempt to dispute Euram Bank's evidence.

## STATEMENT OF THE FACTS AND CASE

## I.    EURAM BANK – JURISDICTIONAL FACTS

European American Investment Bank Aktiengesellschaft is an Austrian company with its principal place of business in Vienna, Austria. (Penner Aff. ¶ 2, JA 38; *see* Compl. ¶ 3, JA 6.) It is a banking institution organized under the laws of Austria and licensed in Austria. (Penner Aff. ¶ 2, JA 38.) It does not provide any kind of tax advice and, in fact, is prohibited by Austrian law from doing so. (*Id.* ¶ 3, JA 38.) In 2002, the time period at issue, Euram Bank had 17 employees. (2d Penner Aff. ¶ 6, JA 241.)

Euram Bank does not conduct or solicit business in the United States. It has no affiliates in the United States, is not incorporated or licensed to do business in the U.S., and does not manufacture or directly sell any products in the U.S. (Penner Aff. ¶ 4, JA 39.) Euram Bank employs no agent for service of process in the U.S. (*Id.* ¶ 5, JA 39.) It has never had offices in the U.S., nor has it ever had mailing addresses or telephone listings in the U.S. (*Id.* ¶ 6, JA 39; Compl. ¶ 11, JA 8.) It maintains no bank accounts, has never owned or leased property (real or otherwise), and pays no taxes in or to the U.S. (Penner Aff. ¶ 7, JA 39.) Euram Bank does not have any officers, employees, or agents in the U.S. and does not advertise in the U.S. (*Id.* ¶ 8, JA 39.)

Euram Bank's predecessor entity, Privat und Investmentbank AG, was founded in 1990. (*Id.* ¶ 9, JA 39; Lewis Decl. Ex. D, Austrian Company Register, at 2, JA 81.) In 1999, it was purchased by EuropeAmerican Investment Holdings N.V. ("Euram Group") and renamed to "European American Investment Bank Aktiengesellschaft."[1] (Austrian Company Register at 2, 6, JA 81. 85.) This predecessor entity, for a time, owned Pali Capital, Inc. ("Pali" or "Pali Capital"), a U.S. broker-dealer. (Penner Aff. ¶ 10, JA 39; *see also* Compl. ¶ 11, JA 8.) In 2006, however, the predecessor entity split-off its banking business and sold it to

---

[1]     The Complaint incorrectly refers to the former parent as "European American Investment Holdings NV" rather than "EuropeAmerican". (*See* Penner Aff. ¶ 9, JA 39; Compl. ¶ 11, JA 8.)

3

Euram Holding AG, a company formed by a new group of unaffiliated investors. The new entity took ownership of some "assets, liabilities, contracts, licenses and operations pertaining to banking business, including the Euram Bank brand."[2] (Penner Aff. ¶ 11, JA 39-40.)  The current Euram Bank has no ties to any of the other Euram Group entities, including Pali Capital.  (*Id.* ¶ 12, JA 40.)

Even when owned by Euram Group, Euram Bank operated separately from the other entities and observed all proper corporate formalities.  For example, Euram Bank did not share employees, offices, or phone numbers with other entities.  (*Id.* ¶ 13, JA 40.)  Each entity kept separate books and financial records. (*Id.*)  Euram Bank and its subsidiaries were adequately capitalized and each kept its assets separately.  (*Id.* ¶ 14, JA 40.)

Stretching even back to the predecessor entity's founding in 1999, Euram Bank has had only a handful of American clients—25 or less in total.  (*Id.* ¶ 15, JA 40.)  The Plaintiff-Appellant, Richard W. Mann, was one of them.  (*Id.*)  Those clients, including Mann, reached out to Euram Bank, or its predecessor, of their own volition.  (*Id.*)  Mann was the only client located in North Carolina.  (*Id.*) Euram Bank did not solicit customers or advertise for customers in the U.S.  (*Id.* ¶¶ 4, 8, JA 39.)  No Euram Bank employees ever traveled to the U.S., let alone

---

[2]    The predecessor entity subsequently renamed itself Pali Holding AG, then Pali Holding GmbH.  (Penner Aff. ¶ 11, JA 40; Austrian Company Register at 2, JA 81.)  According to the Austrian Company Register, Pali Holding GmbH still exists.

North Carolina, to conduct any business or serve any clients.[3]  (*Id.* ¶ 17, JA 40.)

Euram Bank currently has no American clients.  (*Id.* ¶ 18, JA 40.)

## II.    RICHARD MANN – TAX SHELTER TRANSACTION

In December 2002, Mann entered into a tax shelter transaction called the

"Euram Rowan" transaction.  (Compl ¶ 6, JA 7; Mann Aff. ¶ 2, JA 236.)  Mann

paid a fee of $875,000 to an entity called "European American Investment

Group."[4]  (Mann Aff. ¶ 2, JA 236.)  Mann alleges he was contacted at his home by

Thomas D. Seck ("Seck"), who was at the time the "National Director, Client

Services" for Pali Capital.  (*Id.*; Knight Decl. Attach. 2, Marketing Materials at 3,

JA 166.)  Seck provided Mann with marketing materials, which included a two-

page flyer for Euram Bank describing the bank and listing selected employees.

(*See* Marketing Materials at 56-57, JA 219-20.)

The marketing materials, which discuss "Euram Oak" and "Euram Birch"

transactions, but not a "Rowan" transaction, were labeled with the logo for "Euram

Structured Products," another member of the Euram Group.  (*See generally*

Marketing Materials, JA 164-220.)  Euram Bank was not involved in the drafting

of the marketing materials, nor had anyone at Euram Bank seen these materials

---

[3]     Nor did Euram Bank execute any agreements, including Mann's loan
agreement, in the United States.  When transacting agreements with distant clients,
Euram Bank employees wait until they receive all signed documents from clients
before signing the documents themselves.  (Penner Aff. ¶ 17, JA 40.)
[4]     It is unclear who this entity is, but it is assuredly not Defendant Euram Bank.

prior to this suit. (2d Penner Aff. ¶ 6, JA 241.) Euram Bank also did not draft the flyer describing the bank, nor did it authorize its use. (*Id.* ¶ 7, JA 241.) No one at Euram Bank has had any contact with or knows Seck. (*Id.* ¶ 8, JA 241.) Euram Bank played no part in designing or planning the Rowan transaction. (*Id.* ¶ 10, JA 242.)

In order to finance the Rowan transaction he orchestrated with Seck, Mann took out a loan with Euram Bank and also had the bank execute four options transactions. Mann concedes that these transactions—the only ones he engaged in with Euram Bank—do not give rise to his claims. (Pl.'s Opp'n at 19, JA 120.) To obtain this loan, Mann affirmatively reached out to Euram Bank. (Lewis Decl. Ex. B, Loan Request Letter at 1, JA 70 ("I would like to receive from you the terms on which you would be prepared to extend to me a secured loan facility.").) He admitted that he had "not been previously contacted, approached, or solicited by [Euram Bank] or any of [its] representatives or affiliates in respect on the Loan Request but have made this request independently." (*Id.*) Mann specifically held himself out as a "sophisticated investor" who qualified as an "Accredited Investor" under the Securities Act of 1933 and as a "qualified eligible person" under the Commodities Exchange Act. (*Id.*)

Mann now claims that the loan was a sham, describing it as a "cashless paper entry" loan and claiming that "the cash could never leave the bank." (Pl.'s

Opp'n at 7, JA 108; Compl. ¶ 9, JA 8.)  However, on its face, the loan is a normal loan, and it was secured by ample collateral, giving the bank adequate assurances to provide the loan.  (*See* 2d Penner Aff. ¶ 9, JA 241.)  And Mann in fact did use the funds that were available to him. (*Id.*)  Similarly, the options transactions were common options contracts based on industry standard options agreements authored by the International Swaps and Derivatives Association.  (*Id.* ¶ 11, JA 242; *see* Supp. Lewis Decl. ¶ 2, JA 246.)  Once the bank determined that the options did not require it to put up any capital, it prepared and executed the contracts. (2d Penner Aff. ¶ 11-13, JA 242.)  Euram Bank had no knowledge of Mann's illicit plans for the options; it simply executed the transaction in a manner consistent with normal investment bank practice. (*Id.* ¶ 10, 13, JA 242.)

The Loan Agreement also contains a provision that English law governs the interpretation and construction of the contract (Lewis Decl. Ex. A, Loan Agreement ¶ 18.1, JA 61), and a provision for exclusive jurisdiction in England and Wales (*id.* ¶ 18.2, JA 61).  As to the options contracts, the standard industry agreement underlying the options provides that in the event a dispute arises that "each party irrevocably submits to the jurisdiction of the English courts."  (Supp. Lewis Decl. Ex. E, ISDA Master Agreement ¶ 13(b)(i), JA 262; *see* Loan Agreement ¶ 18.1, JA 61.)

## III.  THE IRS INVESTIGATES MANN

Sometime later, the IRS began an audit of Mann's 2002 income tax return. The results of the investigation surrounding Mann and his transaction centered around documents and testimony provided by Mann himself, and by Pali Capital. (*See generally* Pl.'s Objection Ex. 1, IRS Form 886-A ["IRS Memo"], JA 299.) No testimony, documentation, or other information was sought or received from Euram Bank.  (2d Penner Aff. ¶ 4, JA 240.)

In 2011, the IRS determined that Mann improperly claimed a loss based on his 2002 transactions and assessed a penalty against Mann of $911, 869.  (Pl.'s Objection Ex. 2, IRS Form 906, at 2, JA 327; Compl. ¶ 10, JA 8.)  This suit followed.

## IV.  PROCEDURAL HISTORY

Mann filed suit in June 2011 and effected service through the Hague Convention.  (*See* Compl., JA 6.)  On February 22, 2013, Euram Bank filed a motion to dismiss for lack of personal jurisdiction.  (*See* Def.'s Memo. of Law, JA 13.)  Euram Bank also filed an affidavit containing jurisdictional facts (JA 38) as well as documentary evidence supporting its motion, including the Loan Agreement (JA 48) and the related Collateral Agreement (JA 72), the Loan Request Letter (JA 69), and a translation of the Austrian Company Register

supporting its assertions about Euram Bank's corporate history and predecessor entities (JA 80). Euram also provided another affidavit in its reply brief. (JA 240.)

Mann's opposition, filed March 8, 2013 (JA 102), also included a number of exhibits: an affidavit from Mann supporting certain claims of fact (JA 236); copies of options contracts with Euram Bank (JA 128); copies of the marketing materials Mann claims to have received from Seck (JA 164); a small set of documents purportedly produced to the IRS in its investigation of Mann's transaction (JA 221); and a letter from Seyfarth Shaw, dated February 10, 2006, indicating to Mann that it intended to inform the IRS of certain transactions (JA 227). In his brief, Mann conceded that there were no grounds for general jurisdiction. (Pl.'s Opp'n at 16-17, JA 117-18.) Instead, Mann argued that the facts supported personal jurisdiction because, he claimed, Euram Bank purposefully availed itself of the privilege of conducting business in the state through Pali and that the claims arose out of the tax advice Mann received from Pali and Seck. (*Id.* at 7, JA 108.)

On February 24, 2014, the Magistrate Judge issued a Recommendation in favor of dismissal. (Op. and Recommendation of Mag. J. ["Recommendation"], JA 268.) Specifically, the Magistrate Judge found that Mann's allegations in support of personal jurisdiction were entirely conclusory. (*Id.* at 10, JA 277.) The court rejected Mann's claim that Euram Bank purposefully availed itself of the privileges of doing business in North Carolina. The court relied in large part on

9

Mann's Loan Request Letter, and found that Mann's admissions that he had not received any representations or advice from Euram Bank undercut his assertions of personal jurisdiction. (*Id.* at 7, JA 274.) However, the court continued:

> Even if this Court were to not consider this letter, written by Plaintiff, it is clear that Plaintiff's claims do not arise out of the Loan Agreement. Instead, Plaintiff's allegations all assert that Euram Bank acted as an advisor to Plaintiff and that bad advice he received resulted in his tax liability. Moreover, Plaintiff himself acknowledges in his memorandum opposing the motion to dismiss that he "was damaged by the tax strategy and not specifically by the Loan." If, by his own admission, the Loan Agreement and corresponding options transactions are not the basis for Plaintiff's claim, it follows that specific jurisdiction cannot derive from the Loan Agreement and options transactions.

(*Id.* at 8, JA 275 (internal citation omitted).)

The court found that none of the evidence that Mann proffered supported the conclusion that Euram Bank "knew of or had any involvement in tax advice" or that Seck was affiliated with Euram Bank (*Id.*). The court also rejected Mann's "weak attempt" to establish personal jurisdiction by piercing the corporate veil, finding that Mann had neither properly pled the claim nor presented any evidence sufficient to support it. (*Id.* at 9 n.2, JA 276.)

In response to this Recommendation, Mann filed timely objections on March 11, 2014. (Pl.'s Objection, JA 278.) In the Objection, Mann introduced entirely new evidence, including two excerpts from documents purportedly drafted by the

10

IRS.  (JA 299, 325.)  One of those documents was labeled "Form 886-A"  (the "IRS Memo").  (JA 299.)  Mann had this document in his possession earlier and even cited parts of it in his Complaint and previous briefing.  (*See* Compl. ¶ 7, JA 7; Pl.'s Opp'n at 7, JA 108.)  But Mann failed to offer any justification for why he waited to file the document until after the Magistrate Judge's Recommendation. The IRS Memo, as filed, includes redactions—the explanation for which is unknown—and is missing a significant number of pages.  (*See, e.g.*, IRS Memo at 6, JA 304.)

On May 6, 2014, the District Court issued its opinion adopting the Magistrate Judge's reasoning and dismissing the case for lack of personal jurisdiction.  (Order, JA 337.)  The court found, in addition to the findings of the Magistrate Judge, that Mann had failed to present sufficient evidence to show that Pali or Seck acted as Euram Bank's agent so as to allow the assertion of personal jurisdiction.  (*Id.* at 4-5, JA 340-41.)  The court also determined that Mann had failed to argue veil-piercing in his objections, and thus the court reviewed that issue only for clear error.  With regard to the IRS Memo, the court exercised its discretion and refused to accept the new evidence, but also found that even if the court were to consider the IRS Memo, it would not provide any more sufficient facts to demonstrate the existence of a principal-agent relationship.  (*Id.*)

This appeal followed.  (Notice of Appeal, JA 342.)

## SUMMARY OF THE ARGUMENT

Euram Bank has no North Carolina contacts.  Its only dealing with Mann occurred when he, of his own volition, reached out to Euram Bank in Austria to procure a loan and execute some option agreements.  Euram Bank had no knowledge of, and was in no way involved in, Mann's scheme to defraud the IRS.  Mann's desperate attempts to suggest otherwise ring hollow and are entirely devoid of substance.

On a motion to dismiss for lack of personal jurisdiction, the plaintiff must make a prima face showing of personal jurisdiction.  Despite two prior attempts—before a Magistrate Judge and then before the District Court—Plaintiff Richard Mann has been unable to do so.  Instead, he offers only conclusory claims, self-serving allegations, and innuendo, none of which are sufficient for jurisdiction.

At each stage of the proceedings, Mann has revamped his arguments and offered new factual allegations in a bid to fill the holes in his prior attempts.  This appeal is no different.  Not only does Mann's brief heavily rely on factual claims that do not appear in the record, but he again tries to raise new issues or resurrect those he has previously waived.

Mann focuses on the contents of a Memo by the IRS that purportedly outlines its rationale for rejecting Mann's attempted income-tax deduction.  But Mann held onto this Memo until long after briefing on the jurisdictional question

was complete, and the District Court rejected its submission. Even if it had been properly submitted, the statements in the Memo are not sufficient to support Mann's claims for jurisdiction. Not only does Mann exaggerate the contents of the Memo, but the document itself is based in large part on Mann's own statements. The Memo also makes no attempt to distinguish between Euram Bank and other entities bearing the "Euram" moniker.

On appeal, Mann argues that there are two grounds for finding personal jurisdiction, both based on vicarious liability principles: (1) that Euram Bank was in a principal-agent relationship with its former subsidiary Pali or Pali's employee Seck, and (2) that Pali was a mere instrumentality of Euram Bank justifying piercing the corporate veil. Neither is availing.

None of the facts that Mann has offered prove any of the elements of actual agency, apparent agency, or agency by estoppel under North Carolina law. While Mann makes numerous threadbare and conclusory allegations that the elements are met, he has utterly failed to make any showing of Euram Bank's purported control over Pali or Seck, let alone control sufficient for actual agency. And Mann's claims that he relied on Euram Bank's or Pali's purported statements or actions are belied by his own words in his letter requesting a loan from Euram Bank.

Mann's veil-piercing theory is similarly flawed. In fact, the Complaint makes no mention of this theory and is devoid of sufficient allegations to support

13

Mann's belated request for the extreme measure of piercing the corporate veil. While Mann again makes conclusory claims that Euram Bank treated Pali as a mere instrumentality and exerted complete control over it, he has not been able to respond to the documentary evidence or the affidavits submitted by Euram Bank averring that it observed all corporate formalities and had no knowledge of or control over Pali's activities.

For these reasons, Mann's appeal should be denied, and the District Court's dismissal of Mann's claims should be affirmed.

## **STANDARD OF REVIEW**

On a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff carries the burden to prove the existence of personal jurisdiction by a preponderance of the evidence. *E.g.*, *Mylan Labs., Inc. v. Azko N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). The plaintiff must make at least a prima facie showing of jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). "In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Md. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 396 (4th Cir. 2003). However, "the court may look at both the plaintiff's and the defendant's proof (i.e., the pleadings, legal memoranda, and affidavits) when drawing these inferences." *Shinn v. Greeness*, 218 F.R.D. 478, 480-81 (M.D.N.C.) (citing *Mylan Labs.*, 2 F.3d at 62).

14

"Although the standard may be lenient, the Court need not 'credit conclusory allegations or draw farfetched inferences.'" *Vision Motor Cars, Inc. v. Valor Motor Co.*, 981 F. Supp. 2d 464, 468 (M.D.N.C. 2013); *see also Haley Paint Co. v. E.I. DuPont de Nemours and Co.*, 775 F. Supp. 2d 790, 798-99 (D. Md. 2011) (applying the more restrictive pleading standards outlined by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to personal jurisdiction).

## ARGUMENT

The Magistrate Judge and the District Court properly determined that Euram Bank, a foreign corporation with no contacts with the forum state of North Carolina, could not be subject to personal jurisdiction there.  North Carolina law allows courts to exercise jurisdiction consistent with the limits of due process imposed by the Constitution.  *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).  "Due process requires that in order to subject a defendant to personal jurisdiction, the defendant must have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Nichols v. G.D. Searle & Co.*, 991 F. 2d 1195, 1199 (4th Cir. 1993) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (alteration in original). Appellant Mann has conceded that Euram Bank does not have sufficient contacts

such that it is subject to general jurisdiction in North Carolina. (Pl.'s Opp'n at 16-17, JA 117-18.)

Instead, Mann argues that jurisdiction over Euram Bank "arises out of" its activities in the forum state with Mann. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). But Euram Bank's only connection to Mann comes in the form of a loan it provided to Mann—at his request—and four options contracts it executed on his behalf. Mann concedes that jurisdiction does not arise out of these transactions. (Pl.'s Opp'n at 19, JA 120.) He claims that jurisdiction arises out of tax advice that he weakly attempts to attribute to Euram Bank.

But Mann is unable to make even a prima facie showing that Euram Bank was connected to any tax advice he purportedly received. In fact, Euram Bank is prohibited by Austrian law from offering such advice. (Penner Aff. ¶ 3, JA 38.) This advice, by Mann's own admission, came from Tom Seck, an employee of Pali Capital, a former subsidiary of Euram Bank. (Mann Aff. ¶ 2, JA 236.) But the actions of a subsidiary are insufficient to subject a party to jurisdiction. *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005). Moreover, when he requested the loan from Euram Bank, Mann explicitly acknowledged that he had not received any advice of any kind from Euram Bank and that he had not been solicited by Euram Bank. (Loan Request Letter at 1, JA 70.)

Faced with this evidence, Mann offers only conclusory allegations and purposefully attempts to blur the lines between Euram Bank and other entities. Even his late-offered evidence, the IRS Memo, fails to distinguish between Euram Bank and other entities. None of this evidence is sufficient for Mann to meet his burden to justify jurisdiction. Recognizing the precariousness of his jurisdictional claims, Mann belatedly seeks to argue that Euram Bank is subject to jurisdiction because of an agent-principal relationship with Pali Capital or that the court can pierce the corporate veil between Pali and Euram Bank. Neither argument is supported by fact, and both should be rejected.

## I.  MANN'S ONLY CLAIMS ON APPEAL ARE FACTUAL IN NATURE, AND ARE REVIEWED FOR CLEAR ERROR.

A district court's dismissal for lack of personal jurisdiction is reviewed *de novo* where its conclusions "rest upon legal precepts." *Mylan Labs.*, 2 F.3d at 60. "To the extent the district court's conclusions are based on findings of fact, however, such findings should not be disturbed by an appellate tribunal unless clearly erroneous." *Id.* Here, the questions at issue underlying the jurisdictional determination—(1) whether there was an agency relationship between Euram Bank and Seck or Pali and (2) whether Pali was a mere instrumentality of Euram Bank, allowing the court to pierce the corporate veil—are questions of fact.

Mann has already ratified both Euram Bank's and the Magistrate Judge's statements of the law. In his Opposition Brief, Mann duplicated the legal analysis

from Euram Bank's Memorandum of Law almost in its entirety.  (*Compare* Pl.'s Opp'n at 10-14, 17-18, 20-22, JA 111-15, 118-19, 121-23, *to* Def.'s Mem. of Law at 6-9, 10-11, 13, 15-17, JA 23-26, 27-28, 30, 32-34.)  When objecting to the Magistrate's Opinion, Mann similarly copied the Magistrate Judge's legal analysis and inserted it verbatim into his brief.  (*See* Order at 2 n.2, JA 338.)

Mann requests a *de novo* review, but points to no authority to support this demand, instead arguing that the purported fraud and "ulterior motives" justify a "restart."  (Br. at 29-30.)  But Mann is not a *pro se* litigant subject to "less stringent standards" of pleading "than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  To the contrary, he is, by his own admission, a "sophisticated" and "accredited" investor who was represented by able counsel both in these proceedings and while he engaged in the transaction at issue.  (Br. at 12; Loan Request Letter at 1, JA 70; IRS Memo at 16, JA 314.)

## II.     MANN ATTEMPTS TO INTRODUCE NEW FACTS INTO THE APPELLATE RECORD, BUT THEY CANNOT SAVE HIS CONCLUSORY ALLEGATIONS.

Mann's approach throughout this litigation has been to "hide the ball" by presenting one version of his case and then slowly tweaking it and offering new evidence only after Euram Bank points out the holes or the Court finds Mann's arguments wanting.  He has done so here by introducing new facts into the record and changing his characterization of statements in prior briefing.  Mann's actions

mirror his conduct before the District Court, when he introduced the IRS Memo as support for his claims only after the Magistrate Judge recommended the case be dismissed. Such tactics are contrary to the principles of judicial economy and judicial review. They also only increase the burden on Euram Bank, a foreign entity being forced to defend itself in a faraway court, which is a "unique" burden to which courts must pay special attention. *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 114 (1987).

### A.    Mann's New Factual Allegations Should Be Disregarded.

In his Appellate Brief, Mann introduced many new factual allegations that he did not offer to either the Magistrate Judge or the District Court Judge. These facts have no support in the record and this Court should disregard them. Mann cannot be permitted to expand the record in order to obtain another bite at the proverbial apple. Some of these facts are addressed in Sections II and III, below. However, we outline the most egregious examples here:

- Mann provides a description of the purported investigation by the IRS and his interactions with the investigators over the course of their audit, including statements by IRS agents about the nature of the transactions. (Br. at 2-3, 6-7.) None of this information was presented to the District Court, nor is it in any of the documents provided by Mann during the briefing of the jurisdictional issue.

19

- Mann attempts to justify his agency and veil-piercing claims by offering new details about his thoughts at the time of the transaction regarding Pali, claiming he "felt that Pali Capital was undercapitalized for the long term" (*id.* at 11) or that he did not feel that Pali had "an impressive presence" (*id.* at 5). This is the first time Mann has offered up these self-serving details, and there is no support in the record for such claims. Mann has already admitted that the reason he brought suit against Euram Bank is because it is the only entity that has "substantial resources" (Pl.'s Opp'n at 7, JA 108), and he emphasizes repeatedly on appeal that Euram Bank is a $3 billion entity. (Br. at 5, 11, 12, 21, 23.)

- Mann offers new details about his purported interactions with Seck and characterizations of statements by Seck that appear nowhere in the record below. (*Id.* at 5, 11-12, 22-23.) Mann also now asserts that Seck "paid taxes and owned/leased property" in North Carolina, a fact that is both new and totally irrelevant. (*Id.* at 5.)

- Similarly, Mann, in his effort to point to some documentary evidence, makes broad statements about marketing materials he claims to have received from Seck. (*Id.* at 11-12.) For example, Mann claims that "a Charlotte location is shown on a Euram Group map included with the Oak Strategy marketing materials." (*Id.* at 12.) Setting aside the fact that Euram Group is not the

same entity as Euram Bank, this map appears nowhere in the marketing materials that are in the record (*see* Marketing Materials, JA 164-220), nor has Mann previously made such an assertion.

### B.    The District Court Properly Rejected the IRS Memo, Whose Contents Are Inconsistent With Mann's Claims.

Mann also relies heavily on the IRS Memo to support his claims.  However, as an initial matter, the Memo should not be considered as part of the record.  The District Court rejected Mann's late proffer of the Memo (Order at 4-5, JA 340-41), and this Court reviews such determinations for abuse of discretion.  *Doe v. Chao*, 306 F.3d 170, 183 (4th Cir. 2002); *see also* 28 U.S.C. § 636(b)(1) (in reviewing objections to magistrate judge recommendations, the district court "*may* also receive further evidence" (emphasis added)); *Jesselson v. Outlet Assocs. of Williamsburg, L.P.*, 784 F. Supp. 1223, 1228-29 (E.D. Va. 1991) ("The Magistrates Act was not intended to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court." (citations and internal quotation marks omitted)).

On appeal, Mann does not argue that the District Court abused its discretion.  Nor can he.  Mann provided no explanation below for the late submission of this evidence—a document he already had in his possession and in fact quoted in his Complaint and briefing.  (Compl. ¶ 7, JA 7.)  Rather than include it in his Opposition to the Motion to Dismiss, Mann made the tactical decision to withhold

the Memo and include only certain documents cited within it. (*See* Knight Decl. Attach. 3, JA 221.) And as the District Court noted, Mann failed to even provide the whole Memo, instead providing a "blurry and difficult to read" copy with missing pages, missing exhibits, and even "redact[ions] in parts without explanation." (Order at 5, JA 341.) These reasons more than justify the District Court's exercise of discretion in rejecting the late-filed IRS Memo.

However, as the District Court pointed out, even if the Court were to consider the IRS Memo, it would not support Mann's factual claims regarding jurisdiction. (*Id.*) The IRS Memo is not a document that describes or in any way corroborates Mann's allegations of Defendant's contacts with North Carolina. Instead, it is a form document explaining the IRS's determination that Mann's claimed $17.5 million capital loss in 2002 was not deductible. The IRS Memo is the result of an investigation into Mann and his finances, not Euram Bank. It is based on documents received from and interviews with Mann, his lawyers, and representatives of Pali Capital—which the IRS Memo describes as *Mann's* agent. (IRS Memo at 13, JA 311.) The IRS did not contact Euram Bank or request any documents from it as part of this or any tax shelter investigation. (2d Penner Aff. ¶ 4, JA 240.) Thus, the results of the investigation are based entirely on statements by parties who have every incentive to obscure the issues and deflect their actions

22

onto others. Euram Bank had no opportunity to present its side or correct any misconceptions.

Moreover, it is clear from the IRS Memo that the IRS was not focused on making an independent determination of which specific entities were involved—the focus was squarely on the substance of Mann's transaction and whether his claimed loss was deductible. When one examines the details of the transaction, as Mann requests, combined with all the other evidence, it is clear that Euram Bank did not provide the tax advice underlying Mann's claims and that its contacts with Mann do not give rise to specific personal jurisdiction. Tellingly, the IRS Memo uses the terms "Euram," "Euram Bank," and "Euram Advisors" interchangeably. But Euram Advisors is a completely different entity from Euram Bank. In fact, the only time the Memo includes Defendant's full name—European American Investment Bank AG—is when it quotes a letter by Mann. (IRS Memo at 10, JA 308.) Similarly, Mann points out numerous times that the IRS Memo characterizes Pali Capital as Euram Bank's agent, but fails to note that this characterization is a result of the same quoted letter. (*Id.*) When not quoting Mann, the IRS describes Pali Capital as *Mann's* agent. (*See, e.g.*, *id.* at 13, JA 311.)

Nowhere in the IRS Memo does it indicate that Defendant Euram Bank was the party who provided the tax advice purportedly giving rise to Mann's claims and

to personal jurisdiction. None of the people the Memo names are or have been affiliated with Defendant. The IRS Memo names Paul Frelich, William Pepper, and Thomas Seck as part of Pali Capital, and it names John Staddon as an employee of Euram Advisors. (*Id.* at 9, JA 307.) The Memo also names Rajan Puri and Tania Salim as "Euram" employees (*id.* at 8, JA 306); they were both employees of Euram Advisors. (*See* 2d Supp. Lewis Decl. Exs. F-H, Financial Services Register Entries, JA 331-36.) None of these entities is Defendant Euram Bank.

The Memo also indicates that "Pali Capital Inc. was acquired by Euram Bank in 2001 and divested in 2007." (IRS Memo at 9, JA 307.) This is plainly false and further undercuts the ability of the Memo to support Mann's conclusory claims. As explained above, Pali Capital remains a part of Euram Group; it is owned by an entity that still exists in Austria called Pali Holding GmbH. Euram Bank was divested in 2006 and has no ties to the Euram Group or any of its entities. (*See supra* page 3-4.) Mann has failed to address any of this evidence, attempting only to obscure the distinctions between these entities. He has thus failed to meet his burden to show that personal jurisdiction is proper. Even in his Objections, Mann admits that all of his contacts were with Tom Seck of Euram Advisors/Pali Capital, not with anyone from Defendant. (*E.g.*, Pl.'s Objection at

15, JA 292.)  Mann insists that Defendant prepared the materials that he received, but yet again provides no evidence to substantiate his bald claim.

Taken together, even all of the new evidence that Mann has provided is insufficient to make a prima facie case for personal jurisdiction.  This is true even under a *de novo* standard of review.  At bottom, Mann's claims are conclusory and self-serving.  Whenever Mann attempts to support his claims with documentary evidence, he inevitably exaggerates the truth and import of those documents.  Mann claims to have "infinite detail" about the activities of Euram Bank, through the IRS Memo and other marketing materials.  (Br. at 3; *see also id.* at 4-5.)  But Mann has failed to offer up those materials in support of his case.

By contrast, Euram Bank has pointed to evidence that undermines all of Mann's allegations.  For example, in the signed letter requesting the loan, Mann admitted that he reached out to Euram Bank of his own accord, stating that he had "not been previously contacted, approached, or solicited by [Euram Bank] or any of [its] representatives or affiliates in respect of the Loan Request but [had] made this request independently."  (Loan Request Letter at 1, JA 70.)  Mann also states unequivocally that "no advice has been sought or proffered by Euram Bank."  (*Id.* at 2, JA 71.)  In the Loan Agreement, Mann also verified that he had received no advice from Euram Bank: "The Borrower acknowledges that neither Lender, and any affiliates thereof . . . has provided any tax or investment advice to the

25

Borrower . . . ."  (Loan Agreement ¶ 19, JA 61.)  Mann's only response to this evidence is that these were "boilerplate" documents that he did not author, read, or even understand.  But Mann admits to being a sophisticated and accredited investor who was represented, according to the IRS Memo, by the very counsel that represents him in this action.  (IRS Memo at 15, JA 313.)  Mann's belated contentions of haplessness do not save his far-fetched allegations, and Mann has not offered facts sufficient to justify the assertion of personal jurisdiction.

## III.  THE FACTS DO NOT SUPPORT THE EXISTENCE OF A PRINCIPAL-AGENT RELATIONSHIP BETWEEN EURAM BANK AND PALI OR SECK SUFFICIENT FOR PERSONAL JURISDICTION.

Because Mann is unable to prove that Euram Bank has any direct ties to North Carolina such that there is purposeful availment, he relies instead on Pali Capital and its employee Tom Seck, arguing that Euram Bank had a principal-agent relationship with either Seck or Pali sufficient to support the assertion of personal jurisdiction.  *See Bauer v. Douglas Aquatics, Inc.*, 698 S.E.2d 757, 765 (N.C. Ct. App. 2010).  The determination of an agency relationship is a finding of fact.  *See Mellon Investor Servs., LLC v. Longwood Country Garden Ctrs., Inc.*, 263 Fed. App'x 277, 284 (4th Cir. 2008) ("Whether an agency relationship exists is ordinarily a question of fact . . . ."); *Miller v. Piedmont Steam Co., Inc.*, 528 S.E.2d 923 (N.C. Ct. App. 2000) (treating agency as a question of fact).  Here, the District Court did not commit error when it determined that there was no agency

relationship between Euram Bank and Pali or Seck.  Mann attempts to save his argument by now claiming that Pali or Seck had apparent agency or that there was agency by estoppel.  These arguments are equally unavailing because Mann cannot demonstrate facts necessary to meet the essential elements of those claims.

### A.    Actual Agency

To establish the existence of an actual agency relationship, the plaintiff must prove two "essential elements": (1) that the agent had authority to act on behalf of the principal and (2) the principal exercised control over the agent.  *North Carolina v. Weaver*, 607 S.E.2d 599, 606 (N.C. 2005).  Importantly, "both parties must consent that the agent will act on behalf of the principal in a particular capacity." *Id.*  As a constitutional matter, "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  As the District Court found, Mann failed to demonstrate the existence of any of these elements (Order at 3-4, JA 339-40), and Mann appears to have conceded that point on appeal.  (*See* Br. at 5 ("Mr. Mann argues that Thomas D. Seck could bind Defendant through apparent authority, agency by estoppel, and ratification of unauthorized transactions.").)  Mann argues in his appellate brief that Euram Bank "was always in total control of the transaction" (*id.*), but his blanket statements

lack any evidentiary support.  As to consent to authority, Mann does not allege this anywhere in his pleadings or briefing, let alone offer evidence in support of it.

In fact, the only evidence Mann provides is a single sentence in the IRS Memo that refers to Pali as the agent for Euram Bank.  (IRS Memo at 10, JA 308; *see* Br. at 9; Pl.'s Objection at 5, JA 282.)  But Mann fails to mention that this is a *quote from a letter Mann himself wrote* to Pali.  Mann does not suggest that Euram Bank saw, approved, or agreed to this representation.  In fact, elsewhere in the IRS Memo, Pali is described as Mann's agent.  (*E.g.*, IRS Memo at 13, JA 311.)  Thus, neither the IRS Memo nor Mann's unsupported allegations substantiate the existence of a principal-agent relationship between Euram Bank and Pali or Seck.

## B.   Apparent Agency and Agency by Estoppel

Mann is also unable to demonstrate the elements necessary for apparent agency.  Under North Carolina law, liability for apparent authority only exists where (1) the principal holds out the agent as possessing authority or permits the agent to represent that he had such authority, (2) the third party believes such authority exists, (3) the third party's belief is justifiable and based on the "exercise of reasonable care."  *Phelps-Dickson Builders v. Amerimann*, 617 S.E.2d 664, 669 (N.C. Ct. App. 2005) (citing *Zimmerman v. Hogg & Allen, Professional Assoc.*, 209 S.E.2d 795, 799 (N.C. 1974)).  These elements are similar to those that Mann cites in his brief.  (Br. at 14.)

For the purposes of jurisdiction, North Carolina law considers agency by estoppel as an alternative term for the same vicarious liability as apparent agency, as the tests are similar. *Bauer*, 698 S.E.2d at 764-65 ("Where a person by words or conduct represents or permits it to be represented that another person is his agent, he will be estopped to deny the agency as against third persons who have dealt, on the faith of such representation, with the person so held out as agent, even if no agency existed in fact." (quoting *Hayman v. Ramada Inn, Inc.*, 357 S.E.2d 394, 398 (N.C. App. Ct. 1987))).

Under North Carolina law, Mann has not demonstrated, or even alleged, the necessary elements for apparent agency or agency by estoppel.[5]  By his own admission, all of Mann's interactions concerning the tax transaction were with Seck, never with Euram Bank.  There is simply no allegation that Euram Bank ever indicated to Mann that Seck or Pali was Euram Bank's representative or was otherwise authorized to conduct any business on Euram Bank's behalf.

More importantly, however, it is clear from Mann's own contemporaneous statements that he knew that Pali was not an agent of Euram Bank.  In his letter to Euram Bank requesting the loan, Mann wrote, "I have not been previously contacted, approached, or solicited by you *or any of your representatives* or affiliates in respect of the Loan Request but have made this request

---

[5] The same is true even under the Restatement tests that Mann cites.

independently." (Loan Request Letter at 1, JA 70 (emphasis added).) He also wrote, "I have not received nor relied upon any representation, warranty, assurance or guarantee from you or any of your representatives or affiliates in making the Loan Request and no advice has been sought or proffered by Euram Bank on or in relation to the same." (*Id.* at 1-2, JA 70-71.) Mann relies on this Loan Agreement as the basis of Euram Bank's involvement in and purported control over the transaction, but his very request for the loan makes clear that he did not consider Pali or Seck an agent or representative of Euram Bank. And if Mann did in fact believe Pali or Seck to be Euram Bank's agent, that belief could not have been reasonable, given his representations.

## C.    Agency by Ratification

It is not clear exactly what transaction Mann thinks Euram Bank ratified. Mann has already admitted that jurisdiction does not arise out of the Loan or Securities Agreements. However, these agreements represent Euram Bank's only involvement with Mann. Mann's only other support comes in the form of conclusory allegations that the entire "transaction was controlled by the Defendant who was aware of every step in the process." (Br. at 19.) Mann relies on the IRS Memo to support this claim, but it is clear that the Memo relies on statements provided by Mann and does not attempt to distinguish between Euram Bank and other entities bearing the Euram name. In fact, the Memo only references

employees that work for Pali and those that work for Euram Advisors (an entity that, unlike Euram Bank, was not prohibited by law from giving advice (*see* Penner Aff. ¶ 3, JA 38)), and describes the entities interchangeably.  (IRS Memo at 8-9, JA 306-07; *see* Financial Services Register Entries, JA 331-36.)

In any event, even this claim of ratification is undermined by Mann's own statements.  In the proceedings below, Mann specifically admitted that the Loan Agreement is not a basis for jurisdiction, presumably because he does not want to be subject to its forum-selection clause.  (Pl.'s Opp'n at 19, JA 120 ("Plaintiff was damaged by the tax strategy and not specifically by the Loan.").)  In his request for the loan, Mann stated that he received no advice from Euram Bank and that he reached out to Euram Bank without prior solicitation.  In light of these admissions, Mann cannot now be heard to claim that Euram Bank's sole acts of providing a loan and booking standard option contracts served to ratify any kind of tax advice he purportedly received from Pali or Seck.

## IV.    THE FACTS DO NOT SUPPORT PIERCING THE CORPORATE VEIL.

As an initial matter, Mann has already waived any claim for jurisdictional veil piercing and thus cannot raise it on appeal.  "A party waives the right to appellate review of a magistrate judge's decision if it fails to object to the proposed decision before the district court."  *United States v. George*, 971 F.2d 1113, 1118 n.7 (4th Cir. 1992).  Following the Magistrate Judge's finding that Mann had failed

31

to properly plead or introduce any evidence to support a finding that the court should pierce the corporate veil (Recommendation at 9 n.2, JA 276), Mann failed to make a single mention of veil piercing in his Objections to the Magistrate's Recommendation. Given that Mann failed to raise the issue in his objections, the District Court reviewed the determination for clear error. It found none. (Order at 3 n.4, JA 339 (citing *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005)).) Mann purports to resurrect the argument on appeal. Yet again, he fails to offer sufficient facts to support veil piercing.

It is well-settled that "[a] corporation exists as a legal entity separate and distinct from its corporate shareholders." *Cancun Adventure Tours, Inc. v. Underwater Designer Co.*, 862 F.2d 1044, 1047 (4th Cir. 1988); *see United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." (internal quotation marks omitted)). Thus, "it is generally the case that the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity." *Saudi*, 427 F.3d at 276.

Mann does not present any evidence to overcome this presumption. Instead, for the second time, he misstates the law of jurisdictional veil piercing, relying on *Hoffman v. United Telecomms., Inc.*, 575 F. Supp. 1463, 1472 (D. Kan. 1983), to establish a broad test for veil piercing, requiring only that the court determine

whether there are factors which "establish a flow of benefits or funds to and from the forum such that" there is purposeful availment.  But this broad test, applied to domestic corporations, ignores the fact that, since this 1983 district court decision, the Supreme Court has curtailed the scope of personal jurisdiction over international corporations.  *E.g.*, *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2788 (2011); *Asahi Metal Indus.*, 480 U.S. at 115.

The law of the forum state applies in determining whether the corporate veil should be pierced to exercise personal jurisdiction over a non-resident defendant. *Mylan Labs.*, 2 F.3d at 61.  In North Carolina, piercing the corporate veil is "a drastic remedy [that] should only be invoked in an extreme case."  *Dorton v. Dorton*, 336 S.E.2d 415, 419 (N.C. Ct. App. 1985).  The main determination in veil piercing is whether the subsidiary is a "mere instrumentality" of its parent.  *Glenn v. Wagner*, 329 S.E.2d 326, 330 (N.C. 1985).  To make this determination, the factors in favor of piercing include (1) inadequate capitalization, (2) non-compliance with corporate formalities, (3) complete domination and control of the corporation so that it has no independent identity, and (4) excessive fragmentation of a single enterprise into separate corporations.  *Id.* at 330-31.

Mann has not demonstrated that any of these factors exist here.  The entirety of Mann's allegations consist of conclusory statements that Pali was undercapitalized, that Euram Bank dominated its former subsidiaries, and that it

exerted total control. (*E.g.*, Br. at 5-6.) But merely noting the elements of a claim in declarative form is insufficient. *Twombly*, 550 U.S. at 555("[A] plaintiff's obligation . . . requires more than labels and conclusions . . . ."). This is particularly true when, as here, Euram Bank has presented affidavits and evidence that it observed corporate formalities and that it was not involved in the matters of other entities. Nothing in the record undermines these assertions or otherwise subverts the legitimacy of Euram Bank's corporate structure. *Cf. Mylan Labs.*, 2 F.3d at 63 (affirming the district court's decision that it lacked personal jurisdiction over a parent company where the parent and subsidiary "observed all corporate formalities" and plaintiff "offered no persuasive evidence . . . to counter [the parent company's] representation that [the subsidiary] is an autonomous corporation whose operations, management, and finances are entirely independent of [the parent company]").

Mann also makes much of the fact that Seck mentioned the Euram name and had marketing materials that included the name "Euram Bank" in diagrams and on a background page. This allegation is meant to distort the facts and confuse the distinctions between Euram Bank and other Euram entities that may have given tax advice. First, as discussed above, there is no allegation or evidence suggesting that Euram Bank authorized Seck or Pali to use the Euram Bank name in dealings with Mann. Second, the simple sharing of names and, possibly, trademarks is

insufficient to pierce the veil. *See Negron-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 26 (1st Cir. 2007) (explaining that "the mere use of a trademark or logo" by the subsidiary "does not suffice to demonstrate the existence of the requisite minimum contacts" of the parent).

Finally, Mann claims that the existence of fraud means that the court can assert jurisdiction without piercing the veil. In support of this surprising claim, Mann quotes *Dist. 29, United Mine Workers of Am. v. United Mine Workers of Am. 1992 Benefit Plan*, 179 F.3d 141 (4th Cir. 1999). But the passage at issue is an entirely inapposite discussion not of personal jurisdiction, but of the specific workings of the Coal Act, and the determination of whether veil piercing is required to assess liability under the Act. *Id.* at 145-46. This discussion has no relevance to the question of personal jurisdiction or even the general question of veil piercing. In any case, the "fraud" that Mann cites is his "abusive tax shelter" of which he was a vital part. (Br. at 5.) Far from being the victim of the purported fraud, Mann is in fact the party that the IRS has punished for his role in the illicit tax transaction.

Because Mann's veil piercing argument is woefully lacking in substance and is only supported by conclusory allegations, he has failed to carry his burden to prove the existence of personal jurisdiction.

## CONCLUSION

For all the reasons stated herein, we respectfully ask the Court to deny Mann's appeal and affirm the District Court's dismissal for lack of personal jurisdiction. If this Court grants the appeal, we respectfully ask the Court to remand for further proceedings on the applicability of the forum-selection clauses.

## REQUEST FOR ORAL ARGUMENT

Defendant-Appellee Euram Bank believes that oral argument is unnecessary. There are no complex issues of fact or law, the District Court's judgment was fully supported by and consistent with well-settled precedent, and oral argument will not provide substantial assistance to the Court in understanding the issues.

Respectfully submitted, this 11th day of August, 2014.

*/s/ Timothy Barber*
King & Spalding LLP
Timothy G. Barber
Antonio E. Lewis
100 N. Tryon Street, Suite 3900
Charlotte, North Carolina 28202
Telephone: (704) 503-2600
Facsimile: (704) 503-2622
tbarber@kslaw.com
alewis@kslaw.com

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. 14-1503        **Caption:** Richard W. Mann v. European American Investment

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)**
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the   type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[✓]    this brief contains _____8,780_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]    this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[✓]    this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 _____ [*identify word processing program*] in 14 point font _____ [*identify font size and type style*]; **or**

[ ]    this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) Timothy G. Barber _____

Attorney for Appellee _____

Dated: 8/11/14 _____

# CERTIFICATE OF SERVICE

I certify that on ___8/11/2014_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Raymond A. Knight
3124 Allerton Lake Drive
Winston-Salem, NC  27106
(336) 546-7067
rayaknight@aol.com

Timothy G. Barber
_____
Signature

8/11/2014
_____
Date